Curtis **RODGERS** and Linda **Rodgers**, Appellants,

v.

Daniel M. **CZAMANSKE** and Scott **Orr**, Respondents.

No. WD 46254.

Missouri Court of Appeals, Western District.

Sept. 21, 1993.

454

Gerard D. Eftink, Van Hooser, Olsen & Eftink, P.C., Kansas City, for appellants.

Samuel Preston Williams, Williams & Barzee, Kansas City, for respondent Czamanske.

James P. Barton, Jr., Myerson, Monsees & Morrow, P.C., Kansas City, for respondent Orr.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Curtis and Linda Rodgers appeal from the trial court's order granting summary judgment in favor of Daniel Czamanske and Scott Orr in a legal malpractice action. The Rodgers raise one point on appeal alleging that the trial court erred in granting summary judgment because of the existence of genuine issues of material fact. The judgment is affirmed in part, reversed in part and remanded for trial.

This case is the third case arising out of the same factual circumstances. In both *Rodgers v. Acuncius,* 736 S.W.2d 424 (Mo. App.1987), and *Acuncius v. Yeaman,* 758 S.W.2d 73 (Mo.App.1988), this court considered questions relating to the facts of the instant case. These disputes arose out of a real estate transaction in which the Rodgers signed a listing agreement with Garry Acuncius, a real estate broker from Mexico, Missouri, to sell their farm in Callaway County, Missouri. The listing agreement was signed on March 6, 1980 and was to be binding for a one-year period ending on March 6, 1981. The agreement provided that the Rodgers would pay Acuncius a commission of seven percent of the sale price of the property if the property were sold to or exchanged with any person procured by Acuncius during the term of the agreement or within three months thereafter.

During the same time period, Acuncius was also acting as a co-broker, in conjunction with Bell Investment Company, for Warren and Winifred Walz in the sale of their farm which was located in the Missouri counties of Randolph and Macon. Walz and Rodgers, with the assistance of Acuncius, negotiated an arrangement in which the Walz farm was

to be traded for the Rodgers farm plus $840,000 because the Walz farm had a higher list price than the Rodgers farm. On March 5, 1981, Warren Walz and Curtis Rodgers executed a contract carrying out this agreement. The contract provided that the Walzes would pay Acuncius a commission. Approximately ten days prior to closing, Acuncius provided the Rodgers with closing statements which indicated that a seven percent commission was due from the Rodgers upon closing. Although the Rodgers informed Acuncius that they did not believe they owed commission because the Walzes were the actual sellers of the property, the closing proceeded as scheduled. On May 19, 1981, Acuncius filed suit against Bell Investment Company to collect a commission on the transaction. Acuncius amended his petition on November 9, 1981 by naming the Rodgers and the Walzes as additional parties.

A number of counterclaims and cross-claims were filed in the case. The Rodgers filed a counterclaim against Acuncius alleging that Acuncius had made fraudulent misrepresentations regarding the quantity and quality of the Walz farm. Specifically, the counterclaim alleged that Acuncius had misrepresented the number of acres of bottom land on the Walz farm and had failed to disclose that work had been done, without the proper permits, on the Chariton River which flows through the Walz farm.

A defendant, other than the Rodgers, sought to have the entire case stayed indefinitely to await the outcome of pending federal court litigation that had a bearing upon the issues in the instant case. Acuncius opposed the stay and, pursuant to Acuncius' request, the trial judge severed Acuncius' claim for commission. On October 23, 1984, a separate trial was held on the claim. The jury found that Acuncius was entitled to a commission from the Rodgers and an interlocutory judgment was entered against the Rodgers in the amount of $74,600.

Both Czamanske and Orr represented the Rodgers at trial. After the judgment against them at trial, the Rodgers terminated their relationship with Czamanske and, shortly thereafter, with Orr. The Rodgers hired Thomas Bellmann to represent them at the trial of their counterclaim. On March 11, 1986, trial commenced on the Rodgers' counterclaim but resulted in a mistrial. On July 15, 1986, Bellmann dismissed the Rodgers' counterclaim, which had been pending in Boone County, and Acuncius' interlocutory judgment for $74,600 became final. The Rodgers' motion for new trial was denied on September 15, 1986. The Rodgers appealed claiming that the trial court erred in severing Acuncius' claim. Although Orr and Czamanske had filed the motion for new trial before the Rodgers sought new counsel, Bellmann represented the Rodgers in their appeal of the judgment after it became final. In *Rodgers*, 736 S.W.2d at 427, this court reviewed and affirmed the trial court's judgment.

After the July 15, 1986 voluntary dismissal of their counterclaim, the Rodgers filed suit in Platte County on the same cause of action as the counterclaim in Boone County had alleged. Acuncius filed a motion to dismiss, which was denied. He then secured a preliminary order in prohibition to enjoin the trial court from proceeding to trial. This court made the preliminary order in prohibition absolute in *Acuncius*, 758 S.W.2d at 75, after determining that the counterclaim was compulsory and could not be brought as a separate cause of action in Platte County since it had been dismissed in Boone County.

In October of 1989, the Rodgers filed an action for legal malpractice against Czamanske, Orr and Bellmann.[1] The Rodgers' first amended petition alleged that Orr and Czamanske were negligent in failing to present at trial the Rodgers' fraud and misrepresentation defenses against Acuncius and erroneously advising the Rodgers that the trial judge had ruled that these defenses could not be presented at trial or mentioned in the presence of the jury when, in fact, there is no record of such a ruling. This court found in *Rodgers*, 736 S.W.2d at 427, which was the appeal of the trial court's order granting separate trials of Acuncius' claim and the Rodgers' counterclaim, that no finding or order of the trial court prevented the Rodg-

---

1. The Rodgers settled with Bellmann for $75,000 and Bellmann is not a party to this appeal.

ers from offering evidence of their defenses in order to defeat Acuncius' claim.

The Rodgers' petition also alleges that Orr and Czamanske were negligent in presenting incorrect assertions of fact which confused the jury as to the sequence of the misrepresentations by Acuncius, failing to preserve certain issues for appeal by not offering evidence of Acuncius' fraudulent misrepresentations as to the quantity and quality of the real estate, and failing to object to testimony by Acuncius as to alleged settlement negotiations between Acuncius and the Rodgers. Prior to trial, Acuncius testified in a deposition that Curtis Rodgers offered him $50,000 to settle the dispute over the commission. Curtis Rodgers has, throughout this litigation, denied that he made such an offer to Acuncius. At trial, Acuncius testified regarding the $50,000 settlement offer. Neither Czamanske nor Orr objected to this testimony.

The petition also alleges that Orr and Czamanske were negligent in allowing Acuncius to testify that the Walzes knew that he was to get a commission from both parties without objecting or attempting to introduce the signed statements of the Walzes indicating otherwise. Czamanske had acquired, prior to trial, a written statement and deposition testimony from the Walzes indicating that they were not aware that Acuncius expected the Rodgers to pay a commission. Orr represented in his opening statement that the Walzes' testimony would be presented and would show that they did not know Acuncius expected the Rodgers to pay a commission. Orr and Czamanske attempted at trial to introduce the deposition testimony of the Walzes, since the Walzes were out of the state of Missouri at the time of trial, but the trial court ruled that it was inadmissible.

Orr and Czamanske filed separate motions for summary judgment. The trial court granted the motions on April 10, 1992. The trial court's April 10, 1992 order was not final for purposes of appeal because a counterclaim filed by Czamanske was pending against the Rodgers. On May 29, 1992, however, the trial court entered an order making the April 10, 1992 order final for purposes of

appeal. The Rodgers filed this timely appeal thereafter.

In their sole point relied on, the Rodgers contend that the trial court erred in granting summary judgment to Orr and Czamanske because genuine issues of fact were in dispute. The Rodgers argue that they presented unrebutted evidence that Orr and Czamanske were negligent and that their negligence caused the Rodgers to suffer damages. The Rodgers also argue that the question of whether Orr and Czamanske's liability was discharged by a superseding cause is a question of fact for the jury.

■■■ Summary judgment will be upheld on appeal if the reviewing court determines that the movant had a right to judgment as a matter of law and that no genuine issues of material fact existed. *Manor Square v. Heartthrob*, 854 S.W.2d 38, 41 (Mo.App.1993). In reviewing the trial court's grant of summary judgment, this court must review the record in the light most favorable to the party against whom judgment was entered and allow that party all reasonable inferences which may be drawn from the evidence. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Although it is the burden of the moving party to prove that it is entitled to judgment as a matter of law and that no genuine issues of material fact exist, such does not have to be proved by unassailable proof. *Id.* at 378.

■■■ A defending party, such as Orr or Czamanske, may make a prima facie showing and, thus, establish a right to summary judgment as a matter of law, by showing any one of the following: 1) facts that negate any one of the elements of the claimant's cause of action; 2) that the non-moving party, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or 3) that no genuine dispute of fact exists as to each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381. Once the movant makes a prima facie showing, the burden shifts to the non-movant for a showing that one or more of the material facts, shown by the movant

**458**

not to be in dispute, is genuinely disputed. *Id.*

When faced with a motion for summary judgment, the non-moving party may not rest upon the allegations and denials of the pleadings, but must respond with specific facts demonstrating that there is a genuine issue for trial. *Id.* The non-moving party may demonstrate the existence of a genuine issue for trial through the use of affidavits, depositions, answers to interrogatories or admissions on file. *Id.*

In the instant case, the Rodgers assert a claim for legal malpractice. Legal malpractice is defined as "any professional misconduct or unreasonable lack of skill or fidelity in professional and fiduciary duties by an attorney." *Cain v. Hershewe,* 760 S.W.2d 146, 149 (Mo.App.1988). In a legal malpractice action, the plaintiff must plead and prove the attorney's negligence by showing that the attorney did not demonstrate the skill and diligence ordinarily exhibited by well-informed members of the legal profession. *Cooper v. Simon,* 719 S.W.2d 463, 464 (Mo.App.1986). In addition, the plaintiff must plead and prove that the attorney's negligence was the proximate cause of the plaintiff's damages. *Id.* To prove damages and causation, the plaintiff must prove that, but for the attorney's negligence, the result of the underlying proceeding would have been different. *Bross v. Denny,* 791 S.W.2d 416, 421 (Mo.App.1990).

In their motions for summary judgment, Orr and Czamanske argued only that the voluntary dismissal of the Rodgers' counterclaim constitutes an intervening cause which relieves them of liability for alleged acts of negligence at trial. The trial court articulated this argument as support for its judgment. It found that the pertinent facts were undisputed and the Rodgers' dismissal of their counterclaim on July 15, 1986 was dispositive of the case because such negated the "but for" element of the Rodgers' legal malpractice claim. The trial court's conclusion was that the Rodgers failed to state a claim upon which relief could be granted. Orr and Czamanske did not argue in their motions for summary judgment, nor do they argue on appeal, that they are entitled to summary judgment because of the absence of disputed issues of fact on the Rodgers' specific allegations of malpractice. Whether Orr and Czamanske raised such issues does not limit this court's review, however, because an appellate court is required to sustain the trial court's award of summary judgment if the judgment can be sustained under any theory. *Zafft v. Eli Lilly and Co.,* 676 S.W.2d 241, 243 (Mo. banc 1984).

In the instant case, the trial court correctly granted Orr and Czamanske's motions for summary judgment on the Rodgers' claim that, but for the negligence of Orr and Czamanske, the Rodgers would have been successful in the prosecution of their counterclaim. Actionable negligence requires that a causal connection exist between the conduct of the defendant and the plaintiff's damage. *Sirna v. APC Bldg. Corp.,* 730 S.W.2d 561, 564 (Mo.App.1987). In the instant case, there is no causal connection between the Rodgers' failure to prevail on the counterclaim and the negligence of Orr and Czamanske at trial. Bellmann, the attorney hired by the Rodgers after the trial, dismissed the Rodgers' counterclaim with the intention of refiling it in a different county. Due to the compulsory nature of the counterclaim, it could not be refiled. Bellmann's actions constitute an intervening cause which prevents the recovery of damages by the Rodgers from Orr and Czamanske on the counterclaim. An intervening cause is a new and independent force which interrupts the chain of events initiated by the defendant's negligence in such a significant manner as to become the direct and proximate cause of the plaintiff's damages. *Id.* Bellmann's actions interrupted the chain of events set in motion by Orr and Czamanske's alleged negligence at trial and constituted an independent force which was the direct and proximate cause of the damages sustained by the Rodgers as to their counterclaim. The trial court's grant of summary judgment is affirmed as to the Rodgers' claim of malpractice relating to their counterclaim.

Because an appellate court is bound to uphold the trial court's grant of summary judgment if it can be sustained under any

theory, this court must now address whether Orr and Czamanske have established a right to summary judgment on the Rodgers' remaining claims of negligence by Orr and Czamanske at trial. The Rodgers have properly pled a cause of action for legal malpractice. They have presented evidence in response to the summary judgment motions of Orr and Czamanske, including the affidavit of their expert, Thomas J. Conway, which sets forth specific facts demonstrating that there are genuine issues of material fact for trial. Conway's affidavit and deposition testimony, if found to be true, support the Rodgers' allegations that Orr and Czamanske committed malpractice by the manner in which they conducted the Rodgers' defense at trial. In their petition and in their suggestions in opposition to the motions for summary judgment, the Rodgers set forth facts identifying the specific acts of negligence of Orr and Czamanske which they claim caused judgment to be entered against the Rodgers at trial.

The Rodgers claim that Orr and Czamanske committed malpractice by failing to present evidence of the affirmative defenses of fraud and misrepresentation at the trial on Acuncius' claim for commission. Orr and Czamanske argue that Bellmann's dismissal of the counterclaim caused the interlocutory judgment to become final and constituted an intervening cause relieving them of any liability for alleged acts of negligence at trial. Orr and Czamanske argue that it was not necessary to present evidence proving fraud and misrepresentation as defenses because such evidence was to be presented during the trial of the counterclaim. Orr and Czamanske contend that the trial court made its interlocutory judgment contingent upon the outcome of the counterclaim and that, had the Rodgers' prevailed on the counterclaim, the judgment against Acuncius would have been vacated rather than setoff against the counterclaim recovery. In support of this theory, Orr and Czamanske cite *Pointer v. Edward L. Kuhs Co.*, 678 S.W.2d 836 (Mo. App.1984), and *Sunset Acres Motel, Inc. v. Jacobs*, 336 S.W.2d 473 (Mo.1960). Although these cases hold that a broker forfeits his or

her commission if he or she breaches the duties of loyalty, fidelity and good faith by fraud or misrepresentation, they provide no support for the theory of Orr and Czamanske that the October 1984 interlocutory judgment would have been vacated had the Rodgers prevailed on the counterclaim.

■ An affirmative defense declares that even if the allegations in the plaintiff's petition are established, the plaintiff cannot prevail because additional facts exist which avoid the legal responsibility of the defendant. *Young v. Kansas City Power and Light Co.*, 773 S.W.2d 120, 126 (Mo.App. 1989). The defendant must plead all available affirmative defenses. *Id.* Fraud and misrepresentation are affirmative defenses. *See Peete v. Equitable Life Assur. Soc. of U.S.*, 697 S.W.2d 232, 235 (Mo.App.1985); *Brummet v. Livingston*, 384 S.W.2d 101, 104 (Mo.App.1964). In the instant case, fraud and misrepresentation were pled as affirmative defenses in addition to being asserted in the counterclaim.

■ In examining the nature of an affirmative defense, this court finds that an affirmative defense differs in character and purpose from a counterclaim. An affirmative defense differs from a counterclaim in that an affirmative defense seeks to defeat or avoid the plaintiff's cause of action while a counterclaim is an independent cause of action in which the party asserting it seeks a judgment on his or her own behalf. *McDowell v. Schuette*, 610 S.W.2d 29, 36 (Mo.App. 1981). A litigant may plead both an affirmative defense and a counterclaim on the same theory in the same action. *See Sayers v. Bagcraft Corp. of America, Inc.*, 597 S.W.2d 280 (Mo.App.1980). Affirmative defenses are waived if they are not responsively pled. *Detling v. Edelbrock*, 671 S.W.2d 265, 271 (Mo. banc 1984). A pleader seeking affirmative relief through the assertion of an affirmative defense bears the burden of producing evidence to support the defense. *Clemons v. Becker*, 283 S.W.2d 449, 451 (Mo.1955); *Stewart v. K–Mart Corp.*, 747 S.W.2d 205, 208 (Mo.App.1988).[2] Failure to present such

2. The defendant may also have the benefit of any of the plaintiff's evidence which is favorable to

the defendant. *Stewart*, 747 S.W.2d at 208. In the case at bar, however, there is no evidence by

evidence precludes consideration of an affirmative defense by the trier of fact. *Stewart,* 747 S.W.2d at 208.

■■■■■ Evidence of the Rodgers' affirmative defenses of fraud and misrepresentation should have been presented at trial. Instead, Orr and Czamanske speculate that, if the Rodgers had prevailed on their counterclaim by proving fraud or misrepresentation, the trial court would have been required to vacate the $74,600 judgment. Orr and Czamanske had the opportunity to present evidence of defenses which could have been a bar to the judgment against the Rodgers and failed to do so. Orr and Czamanske's failure to raise the affirmative defenses of fraud and misrepresentation at trial precluded the subsequent utilization of such affirmative defenses as a basis for vacating the judgment. The dismissal of the counterclaim by Bellmann was not an intervening cause relieving Orr and Czamanske of any negligence that occurred in the trial of Acuncius' claim for commission. Disputed issues of fact exist as to whether the presentation of fraud and misrepresentation as affirmative defenses at trial would have changed the outcome of the trial. The order of summary judgment is reversed on the Rodgers' claim of malpractice for failure to present at trial the affirmative defenses of fraud and misrepresentation.

The Rodgers also argue that there is a disputed issue of fact as to whether Orr and Czamanske were negligent in failing to object at trial to Acuncius' testimony of a $50,000 settlement offer allegedly made by Curtis Rodgers. The Rodgers presented the expert testimony of Conway who opined that, after the offer of settlement was admitted, it was impossible for the Rodgers to prevail at trial. Conway testified that such evidence was akin to an admission of liability.

■■■■■ Due to the highly prejudicial effect evidence of a settlement offer may have upon the jury, settlement offers are to be kept from the jury unless there is a clear and cogent reason for admitting such evidence. *Asbridge v. General Motors Corp.,* 797 S.W.2d 775, 781 (Mo.App.1990). Admission of settlement offers at trial serves no pur-

pose but to deter litigants from seeking settlement compromises and, thus, frustrates the public policy which encourages settlements. *J.A. Tobin Const. v. State Hwy. Com'n,* 697 S.W.2d 183, 188 (Mo.App.1985). The erroneous admission of evidence of a settlement offer constitutes reversible error. *Id.*

■■■ The Rodgers have presented sufficient evidence to prove the existence of a disputed issue of fact as to whether the erroneous admission of the alleged settlement offer would have changed the outcome of the trial on Acuncius' commission claim. Such is sufficient to defeat Orr and Czamanske's motions for summary judgment on this claim of malpractice and require the cause to be remanded for trial on this issue.

■■■ The Rodgers raise several other allegations of malpractice against Orr and Czamanske in regard to their performance at trial. Among these are that Orr and Czamanske were negligent for presenting incorrect assertions of fact which confused the jury as to the order of the misrepresentations made by Acuncius. Although the affidavit of Curtis Rodgers was filed in support of the Rodgers' suggestions in opposition to the summary judgment motions, it sets forth only Curtis Rodgers' cursory account of the allegedly confusing manner in which the matters were presented at trial. The affidavit makes reference to the pertinent portion of the trial transcript, but the trial transcript was not included in the record on appeal. Additionally, the Rodgers failed to present expert testimony, in response to Orr and Czamanske's motions for summary judgment, demonstrating a genuine issue of material fact as to whether Orr and Czamanske's presentation of the misrepresentations made by Acuncius was executed with an unreasonable lack of skill and constituted malpractice. *Bross,* 791 S.W.2d at 421. This court affirms the trial court's award of summary judgment as to the allegations of malpractice regarding the allegedly confusing presentation of facts to the jury.

Finally, the Rodgers' claim that the trial court erred in granting summary judgment

the plaintiff which supports the defendants' affir-    mative defenses.

because they showed that there was a genuine dispute of material fact concerning their claim that Orr and Czamanske committed malpractice by failing to present evidence that the Walzes did not know that Acuncius expected to receive a commission from the Rodgers. The Rodgers also claim that Orr and Czamanske committed malpractice by informing the jury during the opening statement that the Walzes' testimony would be presented when in fact no such testimony was presented and Orr and Czamanske knew prior to the opening statement that the trial court was unlikely to admit such evidence.

■■■ With regard to the allegations concerning the Walzes' statement, there is an issue of disputed fact as to whether Orr and Czamanske were negligent. Conway expressed the opinion in his deposition testimony that Orr and Czamanske were negligent in informing the jury during opening statement that evidence would be presented when the admissibility of such evidence was doubtful. Conway did not testify, however, that but for this error, the outcome of the trial would have been different. He testified that these allegations of negligence, when combined with other allegations of malpractice previously addressed, raise an issue of fact for the jury as to whether the outcome of the trial would have been different had these errors not been present. Orr and Czamanske were not entitled to summary judgment on the Rodgers' claim of negligence for the handling of matters at trial concerning the Walzes' lack of knowledge that Acuncius intended to receive a commission from the Rodgers.

The trial court correctly entered summary judgment in favor of Orr and Czamanske as to the Rodgers' claims of malpractice arising from their counterclaim and the Rodgers' claim of malpractice for the allegedly inaccurate presentation of facts to the jury. The trial court erred in granting summary judgment in favor of Orr and Czamanske, however, in regard to the Rodgers' other claims of malpractice. Genuine issues of fact remain as to whether Orr and Czamanske were negligent in failing to present at the trial on Acuncius' claim for commission the affirmative defenses of fraud and misrepresentation,

failing to object to the testimony of Acuncius in regard to an alleged settlement offer made by Curtis Rodgers, and advising the jury in opening statement that testimony from the Walzes would be presented when they knew it was unlikely the trial court would admit such evidence and, in fact, the court did not. In addition, there is a genuine issue of fact as to whether the outcome of the trial would have been different but for such allegedly negligent conduct of Orr and Czamanske. On these claims, disputed issues of fact exist sufficient to defeat Orr and Czamanske's motions for summary judgment and require this court to remand the cause for trial on such issues.

The judgment is affirmed in part, reversed in part and remanded for trial.

All concur.