# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2311

_____

Jania R. Faulkner,                    *
                                      *
          Appellant,                  *     Appeal from the United States
                                      *     District Court for the
     v.                               *     Western District of Missouri.
                                      *
James H. Ensz,                        *
                                      *
          Appellee.                   *

_____

Submitted:  February 10, 1997

Filed:   March 25, 1997

_____

Before BOWMAN and WOLLMAN, Circuit Judges, and BOGUE,[1] District
     Judge.

_____

WOLLMAN, Circuit Judge.

Jania Faulkner appeals from the district court's[2] grant of judgment
as a matter of law at the close of Faulkner's evidence in Faulkner's suit
against James Ensz for legal malpractice.  We affirm.

Faulkner alleged that Ensz was negligent for failing to file an
administrative charge regarding a possible Title VII sex

---

[1]The HONORABLE ANDREW W. BOGUE, United States District Judge
for the District of South Dakota, sitting by designation.

[2]The Honorable Joseph E. Stevens, Jr., United States
District Judge for the Western District of Missouri.

discrimination claim before the 300-day statute of limitations ran.[3]  The evidence at trial showed the following.  Faulkner was terminated as an apprentice ironworker by the Joint  Apprenticeship Council (JAC) on August 15, 1990.  She hired Ensz to assist her in seeking reinstatement to the apprenticeship program.  Ensz pursued an appeals process within the JAC, which resulted in a hearing in March of 1991.  At the conclusion of that hearing, Ensz told Faulkner that he did not have a "good feeling" about the outcome of the hearing.  Ensz then became aware that Faulkner was interested in pursuing a sex discrimination claim if there was an adverse hearing result.  He told Faulkner that he would look for a lawyer who specialized in discrimination suits.  Faulkner's administrative appeal was denied on April 12, 1991.

Ensz contacted Dianne Moritz, an experienced discrimination-suit attorney, regarding Faulkner's case.  Ensz, Faulkner, and Moritz met on May 10, 1991.  Prior to this meeting, Ensz had not calculated the statute of limitations for filing an administrative charge regarding Faulkner's discrimination claim because he did not believe she had been terminated from the apprenticeship program based on her gender.  At the meeting, and with Faulkner's knowledge, Ensz turned his complete original file on Faulkner's case (the only copy) over to Moritz.  Ensz's position is that he referred the case to Moritz at this meeting.  Faulkner testified that she was aware that Moritz left the meeting with the original file and that it was her understanding that Moritz had taken over the handling of her case.  Moritz testified that she took the file only to review it and determine if she was interested in getting involved in the case, possibly as co-counsel with Ensz.

Moritz reviewed the file and had one meeting at her office with Faulkner to discuss the case, a meeting at which Ensz was not present.  The

---

[3]We disagree with Faulkner's argument that Ensz's possible negligence regarding the 180-day statute of limitations for filing a Missouri Human Rights Act charge is also at issue.  A claim against Ensz regarding the Missouri Human Rights Act was not clearly pleaded in her complaint, and the evidence showed that Faulkner did not tell Ensz that she was interested in pursuing a sex discrimination claim until after the 180-day statute of limitations for filing a state charge had already run.  Furthermore, the parties stipulated that the Title VII 300-day statute of limitations was at issue.

deadline for filing an administrative charge ran on June 12, 1991. Moritz subsequently called Faulkner and told her that she was not interested in taking the case, in part because of the statute of limitations problem. She returned the file to Faulkner.[4] Moritz also called Ensz to tell him that she was not interested in becoming involved in the case. This was the only time Moritz spoke with Ensz after the May 10 meeting.

Faulkner testified that after she learned of the statute of limitations problem from Moritz, she called Ensz, with whom she had not spoken since the May 10 meeting. Ensz said that he could not do anything for her. Faulkner testified that at Moritz's direction she went ahead and filed an administrative charge, which Moritz had agreed to monitor. Faulkner's charges with both the Equal Employment Opportunity Commission and the Missouri Human Rights Commission were denied as untimely. Faulkner subsequently filed a suit against the JAC, which was dismissed because of her untimely administrative filing.

The district court found that Ensz's involvement ended at the May 10 meeting when Moritz became involved and that Faulkner had never acted to involve Ensz again. The court concluded that Moritz's intervention into the case ended Ensz's liability.

---

[4]Faulkner has also sued Moritz for malpractice in state court.

Under Missouri law, a successful attorney malpractice claim requires a causal connection between the attorney's negligence and the plaintiff's damages. "To prove damages and causation, the plaintiff must establish that `but for' the attorney's negligence the result of the underlying proceeding would have been different." London v. Weitzman, 884 S.W.2d 674, 677 (Mo. Ct. App. 1994). "`But for' is an absolute minimum for causation because it is merely causation in fact. . . . [T]here [must] be some causal relationship between the defendant's conduct and the injury or event for which damages are sought." Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 862 (Mo. 1993) (en banc). Furthermore, the doctrine of intervening cause applies in attorney malpractice cases. See Rodgers v. Czamanske, 862 S.W.2d 453, 458 (Mo. Ct. App. 1993). "An intervening cause is a new and independent force which interrupts the chain of events initiated by the defendant's negligence in such a significant manner as to become the direct and proximate cause of the plaintiff's damages." See id.

We agree with the district court that Faulkner's case fails on the causation element. The evidence does not show that the scope of Ensz's representation extended beyond representing Faulkner in the JAC hearing seeking her reinstatement into the apprenticeship program. Assuming, however, that Ensz had responsibility for Faulkner's discrimination case, the only reasonable inference that can be drawn from the evidence is that Ensz's involvement ended on May 10. Ensz gave his original file to Moritz and had no further contact with Moritz or Faulkner; Faulkner's own testimony showed that she believed Ensz was no longer involved after Moritz took the file; and Moritz returned the file to Faulkner, not Ensz. The termination of Ensz's involvement, coupled with Moritz's assumption of the case, ended the causal relationship between Ensz's actions and Faulkner's injury.

We find Faulkner's argument that Ensz can be held liable for Moritz's conduct to be unpersuasive and the authorities Faulkner cites to be inapposite.  In light of our affirmance of the judgment, we need not reach Faulkner's argument that the district court abused its discretion in striking her designated experts.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.