COIN ACCEPTORS, INC., Appellant,

v.

HAVERSTOCK, GARRETT & ROBERTS, LLP, et al., Respondents.

No. ED 98702.

Missouri Court of Appeals, Eastern District, Division One.

April 9, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 16, 2013.

Application for Transfer Denied Aug. 13, 2013.

---

Jeffrey J. Lowe, Clayton, MO, for appellant.

Gary Phillip Paul, Daniel George Tobben, Clayton, MO, Thomas Joseph Plunkert, St. Louis, MO, for respondent.

Clifford H. Ahrens, Presiding Judge.

Coin Acceptors, Inc. (Coinco) appeals the trial court's judgment in favor of the company's former lawyers in an action for malpractice. We affirm.

## Background

Coinco manufactures coin acceptors used in vending machines. Respondents are the law firms of Haverstock, Garrett & Roberts LLP (Haverstock) and Polster, Lieder, Woodruff & Lucchesi, L.C. (Polster) and individual attorneys Robert Garrett and David Chervitz. Coinco alleges that Respondents committed malpractice by negligently advising and defending Coinco in a patent infringement lawsuit resulting in a $27 million judgment against Coinco.

*Underlying Suit*

In 1988, Coinco's competitor Mars, Inc., notified Coinco that two of Coinco's machines infringed two of Mars's patents, known to the parties as the '137 and '719 patents. Respondents advised Coinco that its devices did not infringe Mars's patents and that those patents were invalid, so Coinco continued to make and sell its products. In 1990 Mars filed a patent infringement lawsuit against Coinco in the U.S. District Court for the District of New Jersey, and the parties litigated the case in a bench trial before the Hon. John C. Lifland. Of the protracted procedural history of the case, the following events are pertinent to this appeal. In 1999, the district court issued an opinion finding that Coinco had infringed the '137 patent. In November 2000 the court issued another opinion finding additional infringements of the '137. However, the court stayed the determination of monetary damages pending resolution of the '719 case. In March 2002, the court found that Coinco had infringed the '719 patent but that the patent was invalid because Coinco's invention preceded Mars's patent application; thus, Coinco escaped liability. Mars moved for reconsideration on the issue of validity, Coinco responded with a memorandum in opposition, and the court held another hearing in July 2003. Respondents' performance in that hearing would become the focus of scrutiny in Coinco's subsequent malpractice suit.

On July 24, 2003, the first of two days of re-hearing, Mr. Garrett was lead counsel, supported by Mr. Chervitz. Local counsel and attorneys from the law firm of Bryan Cave were also present. During the hearing, Judge Lifland [1] asked for specific ref-

---

1. Consistent with the parties' briefs and the trial court's memorandum, and to avoid confusion with the trial court in the present malpractice suit, we sometimes refer to the federal district court in the underlying patent suit as "Judge Lifland." We do not mean to offend the office or personalize the decision.

erences to the transcript supporting Mr. Garrett's argument about the timing of Coinco's product development. Although Mr. Garrett provided some references,[2] he did not have every pertinent citation at his fingertips, so Judge Lifland perused his own copy of the transcript, and Mr. Garrett offered to supplement his argument with further specifics the following day. The court obliged, and the next day Respondents filed an exhibit citing to specific excerpts of the transcript supporting the court's original finding of invalidity. Notwithstanding that illustration, Judge Lifland concluded, from the bench, that the record did not satisfy the "clear and convincing" standard of proof to establish that Coinco's device came first. To explain his reversal, the judge conceded that he had previously applied, erroneously, a lower standard of proof (akin to preponderance of the evidence) but, using the higher "clear and convincing" standard, the record did not establish Coinco's priority "with any degree of certainty."

In response to Judge Lifland's statements from the bench, Coinco, this time represented by Bryan Cave, moved for another rehearing, suggesting that Coinco's presentation (by Garrett) on July 24 "could have been more clear and precise."[3]

In August 2004, the court denied that motion, confirming that it had reviewed the supplemental exhibit presented by Coinco on July 25 and had no concerns with the clarity or precision of Coinco's presentation at oral argument. Concurrently, the court issued its revised order finding that Mars's patent was indeed valid, so Coinco was liable for infringement. Reiterating the reason for reversing his earlier order, Judge Lifland again explained that he had simply "overlooked the strength of the 'clear and convincing' mandate of the controlling decisions of the Federal Circuit, and instead [had] made a finding on invalidity by applying a lesser standard." In particular, the court found insufficient corroboration for Coinco's assertion that it sold its device before Mars filed its '719 patent, although the parties agree that the applicable statute does not require proof of sale.[4] More generally, though Coinco adduced proof that its device preceded Mars's patent application, Judge Lifland found contradictions between the testimony and the "paper trail" and ultimately concluded that the evidence of Coinco's priority was not clear and convincing.

In 2005, the district court entered final judgment on Coinco's liability as to both

2. A sample of Mr. Garrett's responses is as follows. "I don't have those particular sections marked at this time. Mr. Hoormann commenced his testimony, I believe, in volume 24 on page 66.... He started on page 24.70 explaining how coin validation in the 9483 model worked.... I believe most of the testimony relative to the 9482 and 83 started about day 23 and concluded about day 26, I believe, or perhaps 27.... I might point you to page 24.87, your honor, commencing at about line 20 that I had quickly identified. Mr. Hoormann is responding to a question and he indicates that yes, the coin detector chip is controlling the pulses A, B, and A prime, B prime." Mr. Garrett also referred the court specifically to five exhibits numbered 357, 358, 359, 375, and 397.

3. After the July 24 hearing, Coinco's local counsel, Beth Sher, and Ken Mallin of Bryan Cave indicated to Coinco's general counsel, Steve Davis, that Mssrs. Garrett and Chervitz were unprepared and performed poorly. Davis then designated Mallin to handle final summation on the 25th, and Bryan Cave assumed a lead counsel role going forward.

4. 35 U.S.C. § 102(g)(2) requires a competitor asserting priority to show that its invention was (1) conceived and reduced to practice before the filing of the patent and (2) not abandoned, suppressed, or concealed. Coinco offered evidence of sales of its product to establish non-concealment. In his 2002 order, Judge Lifland found that evidence sufficient to establish Coinco's priority.

the '137 and '719 patent infringement claims. Coinco appealed, and its counsel from Bryan Cave briefed and argued the issues on appeal, including Coinco's position that the district court erred as a matter of law by requiring evidence of product sales. Nevertheless, the U.S. Court of Appeals summarily affirmed the district court's order. *Mars. Inc. v. Coin Acceptors, Inc.*, 210 Fed.Appx. 991 (Fed.Cir.N.J. 2006). After further discovery on the issue of damages, the district court entered its final judgment and monetary award in 2007.

### *Malpractice Suit*

Following the outcome of the patent suit, in December 2008, Coinco filed the present action against its trial attorneys, essentially alleging that Respondents provided bad advice and mismanaged the litigation. As relevant here, Coinco claimed that Respondents' inadequate preparation, briefing, and argument in connection with the July 2003 hearing caused Coinco to lose the case. In their defense, Respondents asserted that Coinco's action was barred by the five-year statute of limitations and, even were the action timely, Respondents' performance was not the proximate cause of Coinco's damages.

As pertinent to the points on appeal, the trial court concluded that Coinco's claims relating to Respondents' advice concerning the '137 patent were untimely in that they were filed nine years after the district court's 1999 opinion finding that Coinco had infringed the '137 patent. As such, those claims were dismissed. Conversely, the court concluded that Coinco's claims relating to Respondents' performance concerning the '719 patent were timely in that they were filed within five years after the district court issued its written order in August 2004. The parties proceeded to litigate the merits of those claims and, to

support its case, Coinco proffered an expert's opinion that Coinco would have prevailed in the '719 suit but for Respondents' inadequate preparation and advocacy in the July 2003 re-hearing. The trial court granted summary judgment in favor of Respondents, reasoning that their performance was not the proximate cause of Coinco's loss. Rather, the court explained:

Judge Lifland's August 2004 order may well have been in error as a matter of law. The order was, however, affirmed by the Court of Appeals.... [I]f Judge Lifland's erroneous application of the law was the cause of Coinco's injury, then, as a matter of law, defendant's negligence cannot be the proximate cause of judicial error. Judge Lifland's perception of the record and Judge Lifland's understanding or misunderstanding of the law are independent, supervening causes of the loss of the Coinco case....

[W]hen a plaintiff claims that his lawyer's negligence resulted in the loss of an underlying lawsuit, the plaintiff must be able to show a specific error or omission that led to the adverse result ... [E]xpert opinions that the lawyer should have been better prepared, should have argued more forcefully, or should have emphasized certain evidence do not suffice to establish a triable issue of fact concerning proximate cause, unless the expert can point to something in the record of the underlying proceeding itself that supports the conclusion.... [D]efendants' errors in failing to catalogue and emphasize portions of the record simply do not suffice to establish "but for" causation, since Judge Lifland had all the information available to him that plaintiff contends should have been pointed out by counsel....

[I]t is the rankest of speculation to opine that, but for defendants' deficiencies, Judge Lifland would have adhered

to his original ruling. Judge Lifland himself rejected the contention that Coinco's July 2003 presentation was deficient in his eyes. He canvassed practically the same evidence ... and decided that it was not good enough to persuade him.... Judge Lifland, not defendants, snatched Coinco's victory away.

Coinco now appeals, asserting two points of error: (1) that a genuine issue of fact exists as to whether Respondents' performance was the proximate cause of Coinco's loss in the '719 infringement case and (2) that Coinco's claim regarding the '137 patent was timely because final judgment in that case wasn't entered until 2007.

## Discussion

I. *Summary judgment on '719 claims for lack of causation*

■ For its first point, Coinco asserts that the trial court erred in granting summary judgment for Respondents because there was a factual dispute as to whether Respondents' performance caused Coinco to lose the '719 infringement suit. Summary judgment is appropriate when the pleadings demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6). We review a trial court's grant of summary judgment *de novo.* *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

■ In an action for legal malpractice, a plaintiff must prove that: (1) an attorney-client relationship existed; (2) the attorney acted negligently or in breach of contract; (3) such acts were the proximate cause of the client's damages; and (4) but for the attorney's conduct, the client would have been successful in the prosecution of the underlying claim. *Baldridge v. Lacks,* 883 S.W.2d 947, 953 (Mo.App.1994). Although the question of proximate cause is usually for the jury, where the evidence connecting the injury to the negligence amounts to mere conjecture and speculation, the court must not allow the case to be submitted to the jury; rather, the question becomes one of law for the court. *Lange v. Marshall,* 622 S.W.2d 237, 238 (Mo.App.1981). A court properly interposes its judgment in this determination when the evidence reveals an intervening cause that eclipses the defendant's role in the plaintiff's injury. *Tompkins v. Cervantes,* 917 S.W.2d 186, 190 (Mo.App.1996). Such was the basis for the trial court's summary judgment here. In sum: Coinco's expert opinion evidence connecting Respondents' performance to Coinco's loss was conjecture and speculation, and Judge Lifland's independent analysis was an intervening cause; thus, Coinco could not establish the elements of causation essential to its *prima facie* case, so summary judgment was proper.

Coinco challenges the trial court's characterization of its evidence as speculative and insists that its expert's opinion was sufficient to create a genuine issue of fact as to whether Respondents' briefing and oral argument in the July 2003 re-hearing caused Coinco's defeat in the '719 infringement case. That opinion, by Robert Browne, can be distilled as follows: the evidence in the underlying record proved that Coinco's invention preceded Mars's patent application; on Mars's motion for re-hearing, Respondents failed to explain proper application of the law and failed to cite specific evidence of its priority; as a result of Respondents' deficient briefing and argument, Judge Lifland erroneously concluded that Mars's patent could only be invalidated by proof of an earlier sale by Coinco; and ultimately, had Respondents argued more competently, Judge Lifland

would have ruled in Coinco's favor. Coinco also notes that Respondents' own expert agreed that the evidence established Coinco's priority and Judge Lifland erred in upholding the '719 patent. Naturally, however, that expert did not agree that Respondents' advocacy was inferior or that they could have done anything differently to change Judge Lifland's view. The trial court concluded that Coinco's opinion evidence of inadequate preparation and argument was insufficient to create a jury question as to whether the outcome of the underlying case turned on those deficiencies, particularly in light of Judge Lifland's intervening independent legal analysis. This court reaches the same conclusion.

In support of its position that summary judgment for lack of causation was improper, Coinco relies on *Rodgers v. Czamanske,* 862 S.W.2d 453 (Mo.App.1993), but that case does little to advance Coinco's theory. Although the *Rodgers* court reversed summary judgment on certain aspects of the defendants' representation, it affirmed on others resembling Coinco's claims here. In particular, the *Rodgers* court identified genuine issues of fact as to whether the defendants were negligent in failing to assert affirmative defenses and object to clearly inadmissible evidence. However, the court found no triable issues as to whether the defendants were negligent for poorly presenting certain facts to the jury or where the defendants' mishandling of a counterclaim was causally interrupted by new counsel's voluntary dismissal of that claim. Coinco's allegations against Respondents are dissimilar to those that *Rodgers* deemed viable and quite similar to those deemed unavailing. Specifically regarding causation, though Coinco insists that Judge Lifland's reversal was not an interruption like the *Rodgers* dismissal but instead was a direct result of Respondents' deficiencies, the record shows that Judge Lifland ruled

quite without regard to Respondents' exploits. Mr. Garrett might not have provided every relevant citation to the record when Judge Lifland asked on July 24, but Respondents provided complete information the next day, and Judge Lifland expressly disclaimed any deficiency with their performance. Moreover, Judge Lifland had an entire year to study Coinco's motion for re-consideration, the law, and all of the evidence presented over 40 days of trial before he issued his written order in August 2004. On this record, Coinco's contention that Respondents could have won over Judge Lifland if only they had exhibited superior skill in July 2003 is purely speculative. Judge Lifland's changed perception of Coinco's burden of proof was a wholly independent cause.

Coinco also cites *Roberts v. Sokol,* 330 S.W.3d 576 (Mo.App.2011), but that case, too, is unsupportive. In *Roberts,* the defendants were sued for failing to adduce testimony on multiple contested issues and failing to object to incorrect jury instructions, and they defended their actions only as trial strategy or good faith errors in judgment. The appellate court held that such issues were fact questions for a jury, thus summary judgment was improper as to those claims. However, the court upheld summary judgment on other claims where the plaintiffs settled the underlying suit as to one party, thereby eliminating the *prima facie* elements of causation and damages. Thus, the only claims deemed triable in *Roberts* were fatal technical omissions. Coinco does not allege that Respondents' failed to introduce vital evidence at trial; it simply critiques the quality of Respondents' argument on re-hearing. "We are loath to attach conclusive weight to the relatively spontaneous responses of counsel to equally spontaneous questioning from the Court during oral argument." *Moose Lodge No. 107 v. Irvis,*

407 U.S. 163, 170, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

Lastly, Coinco cites *English v. Hershewe*, 312 S.W.3d 402 (Mo.App.2010), which is similarly inapposite. There, a lawyer was sued for failing to send a settlement offer by certified mail, and there were conflicting facts as to whether the postal receipt was lost or whether the omission was inadvertent or deliberate. (Prevailing authority at the time deemed fax transmission sufficient, but that authority was overturned days later—a development that the lawyer should have known, claimed the plaintiff client.) The appellate court held that these were jury questions, so summary judgment was improper. Again, *English* involved a fatal procedural oversight and varying explanations for it, whereas Coinco alleges no such technical error or unknown circumstances.[5]

In addition to Coinco's cited authorities, other precedent offers accordant instruction undermining Coinco's theory. In *Cain v. Hershewe*, 760 S.W.2d 146 (Mo. App.1988), the court held that an attorney's alleged negligence was not the proximate cause of the plaintiff's loss because the plaintiff was aptly represented by other counsel on appeal and still lost. In *Tompkins v. Cervantes*, 917 S.W.2d 186 (Mo.App.1996), the court held that an attorney's alleged failure to establish causation through expert testimony at trial was not the cause of the plaintiff's loss of the case on appeal. The plaintiffs had initially prevailed at trial, but this court reversed because the evidence of causation (in the underlying case) was insufficient as a matter of law due to multiple intervening events.[6] Given this court's holding precluding the plaintiffs' recovery in the underlying suit as a matter of law, the unfavorable outcome could not be attributed to their lawyer's performance at trial. Similarly, though Coinco had prevailed initially, Judge Lifland reversed his analysis, and that subsequent decision was upheld on appeal.

The foregoing precedent directs us to conclude that the trial court's summary judgment was appropriate. Mr. Browne's opinion that Judge Lifland would have ruled in Coinco's favor had Mr. Garrett reminded him of the statutory elements and provided more specific transcript citations on July 24 rather than on July 25 is pure speculation. The parties litigated the underlying dispute for over a decade. Judge Lifland's original order in Coinco's favor in 2002 illustrates his understanding of the relevant statute and the pertinent facts of the '719 case. His statements from the bench on July 25 and his subsequent written order of August 2004 explain his reversal, and he expressly rejected the notion that it had anything to do with Respondents' arguments. Rather, after further review of Federal Circuit precedent, he determined that the "clear and convincing" standard of proof required

---

5. Insofar as Coinco faults Respondents for not specifically reminding Judge Lifland that the relevant statute doesn't require a sale, Coinco does attempt to characterize this as a technical omission of law akin to the omissions deemed triable in *Rodgers*, *Roberts*, and *English*. We reject the analogy. Those cases involved omissions that resulted in the client's waiver of the matter—affirmative defenses not raised, evidence not adduced, a letter not sent. In contrast, Respondents' alleged omission was not a technical waiver but rather a reasonable assumption that, after a decade of litigation, Judge Lifland was already familiar with the statute, as he previously demonstrated in his 2002 order in Coinco's favor. As the trial court noted, Respondents did not ever "misstate, misconstrue, or otherwise present an incorrect view of the law."

6. *Tompkins v. Kusama*, 822 S.W.2d 463 (Mo. App.1991).

more corroborative evidence of priority than Coinco produced at trial.

As the trial court reasoned, the evidence that Coinco now claims that Respondents should have cited at oral argument is the same evidence that Judge Lifland considered and found insufficient. "Judge Lifland ... squarely decided that he was not persuaded by that evidence, and [Coinco] is not able to point to any deficiency of [Respondents] which could possibly have prevented Judge Lifland from changing his mind." Moreover, on appeal, Coinco challenged Judge Lifland's alleged error of law but, as previously noted, the Federal Circuit affirmed his decision.

Although Coinco also impugns Respondents for failing to emphasize statutory nuances, its malpractice petition only pleaded Mr. Garrett's ineptitude for failing to cite to the transcript at oral argument. Either way, we find no Missouri case suggesting that such allegations suffice to create a triable issue on the element of causation, particularly where the ultimate outcome is so clearly attributable to intervening independent decisions. Simply put, Coinco cannot establish on this record that Respondents' performance was the cause of Coinco's loss of the '719 infringement case. Point denied.

## II. *Dismissal of 137 claims as untimely*

 For its second point, Coinco asserts that the trial court erred in dismissing its claim of Respondents' malpractice in the '137 infringement suit as untimely. Our review of the grant of a motion to dismiss is *de novo*. *D.A.N. Joint Venture, III v. Clark*, 218 S.W.3d 455, 457 (Mo.App. 2006). When relevant facts are uncontested, the question of whether a statute of limitations bars an action can be decided by a court as a matter of law. *State ex rel. Marianist Province of U.S. v. Ross*, 258 S.W.3d 809, 811 (Mo. banc 2008).

 Actions for legal malpractice based on negligence are subject to a five-year statute of limitations set forth in section 516.120(4) RSMo. That period begins to run when the cause of action accrues, meaning when the damage is sustained and capable of ascertainment. § 516.100; *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997). Damage is ascertainable when the fact of the damage can be discovered or made known. *Id.* However, all possible damages need not be known or knowable. *Id.* Ascertainment is when a reasonable person would have been put on notice that an injury may have occurred and would have undertaken to ascertain the extent of the damages. *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 584 (Mo. banc 2006).

Here, the trial court determined that "Coinco was put on notice of [Respondents'] erroneous advice regarding the '137 patent in December 1999, when the federal court found infringement of that patent." Coinco, however, contends that its malpractice claim didn't accrue until the final judgment in the underlying suit was entered against Coinco in 2007. In support of its position, Coinco cites precedent holding that damage from legal malpractice is capable of ascertainment when judgment in the underlying suit is entered against the plaintiff client. *Murray v. Fleischaker*, 949 S.W.2d 203 (Mo.App. 1997). If the underlying case is still pending, then the client could still prevail, in which case the client would have no damages from the alleged malpractice. *Cain v. Hershewe*, 760 S.W.2d at 149; *Eddleman v. Dowd*, 648 S.W.2d 632 (Mo.App. 1983). These authorities, while valid on far simpler procedural facts, do not dictate the only method of ascertainment.

In *Brower v. Davidson*, 686 S.W.2d 1 (Mo.App.1984), the defendants failed to ef-

fectuate a corporate dissolution and distribution of assets, resulting in a significant tax liability for the plaintiff client. The IRS issued its audit report stating the tax deficiency in May 1975. The client appealed and lost and entered into a stipulation that was reduced to judgment in December 1979. The client filed its malpractice claim in July 1980, insisting that its damage was not capable of ascertainment until the final judgment issued in December 1979 because, before then, there was still a possibility that the client would prevail on appeal. The appellate court rejected this reasoning and held that the statute of limitations began to run in May 1975 when the plaintiff was first informed of the deficiency. "From that point on, plaintiffs can scarcely claim that they did not know that they were exposed to a substantial tax liability." *Id.* at 3. See also *M & D Enterprises, Inc. v. Wolff*, 923 S.W.2d 389 (Mo. App.1996) (statute of limitations began when client, on advice of counsel, consented to temporary injunction resulting in monthly lost profits, notwithstanding that extent of client's damages were unknown until resolution of underlying case).

 Similarly here, Coinco's liability for infringing the '137 patent was declared in Judge Lifland's 1999 opinion (expanded in 2000). At that point, *the fact of* Coinco's damages from Respondents' advice was known and ascertainable. Only the *extent*

of its damage (Mars's monetary award) was unknown pending resolution of the '719 case, after which financial discovery proceeded as to both cases. Under *Brower, Klemme,* and *Powel,* Coinco's injury was ascertainable, hence the statute of limitations commenced, when Judge Lifland entered his findings of infringement.[7] The trial court did not err in dismissing as untimely Coinco's malpractice claim involving the '137 patent. Point denied.

## Conclusion

The trial court did not err in granting Respondents summary judgment on Coinco's '719 claims. Mr. Browne's opinion that Coinco would have prevailed but for Respondents' shortcomings was purely speculative, and Judge Lifland's reversal was an independent intervening act. The trial court also did not err in dismissing Coinco's '137 claims as untimely. The fact of Coinco's damage from Respondents' alleged bad advice was capable of ascertainment when Judge Lifland issued his opinions on infringement in 1999 and 2000. The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, J., concurs.

GLENN A. NORTON, J., dissents in a separate opinion.

---

7. Insofar as *Powel* describes ascertainment as the moment when a reasonable person would have been on notice of the injury *and would have undertaken to ascertain the extent of the damages,* we do not interpret the latter phrase to require any particular factual or procedural context enabling the plaintiff to investigate and calculate its precise damages (*e.g.,* damages discovery or judgment). Such an interpretation would essentially relieve the plaintiff of its knowledge of injury until damages were specified, and that result is inconsistent with well-established precedent holding that only the *fact* of damage need be ascertainable; the *extent* of damage need not be known or even knowable. *Klemme,* 941 S.W.2d at 497; See also *Brower,* 686 S.W.2d at 3–4 (quoting *Dixon v. Shafton,* 649 S.W.2d 435, 439 (Mo. banc 1983).) Rather, we understand the *Powel* court to mean simply that a reasonable person upon knowing the fact of the damage would consider the potential exposure. For example, here, the record indicates that Coinco was already projecting its '719 infringement liability immediately after the July 25 hearing. In this light, Coinco's claim that it was unable to appreciate its injury in the '137 case before the final damages award in 2007 is incredible and its version of ascertainment inconsistent with Missouri law.

GLENN A. NORTON, Judge.

I respectfully dissent.

## I. DISCUSSION

### A. Summary Judgment

As to Coinco's '719 clams, the majority concludes that summary judgment was proper because Mr. Browne's expert testimony was purely speculative and insufficient to create a triable issue on the element of causation. It is important to emphasize that a defendant's negligence is a question of fact for the jury to decide, not a question of law for the court's determination. *Roberts v. Sokol*, 330 S.W.3d 576, 581 (Mo.App. S.D.2011). Moreover, Missouri law holds that, except in clear and palpable cases, expert testimony is required to show legal malpractice. *Id.* As the majority notes, Mr. Browne opined that Respondents' failure to explain the proper application of the law and cite specific evidence in support of Coinco's position caused Judge Lifland to rule against Coinco on the 719 patent infringement claims. I find that Mr. Browne's opinion created a triable issue of fact precluding summary judgment and would reverse the trial court's grant of summary judgment in favor of Respondents.[1]

### B. Dismissal

As to Coinco's '137 claims, the majority, relying on the test set forth in *Powel v.*

*Chaminade College Preparatory, Inc.*, 197 S.W.3d 576 (Mo. banc 2006), concludes that Coinco's claims are barred by the five-year statute of limitations under section 516.120(4) RSMo 2000. As stated by the Supreme Court in *Powel*, Missouri Courts apply the "capable of ascertainment test" to determine when a cause of action accrues:

> The issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages. At that point, the damages would be sustained and capable of ascertainment as an objective matter.

*Id.* at 584–85. Relying on the "capable of ascertainment" test, the majority finds that the statute of limitations accrued when Judge Lifland issued the 1999 opinion finding patent infringement. The majority concludes that at the time the 1999 opinion was issued, *"the fact of* Coinco's damages from Respondents' advice was known and ascertainable" and "[o]nly the *extent* of its damage" was unknown. (emphasis in majority opinion). I decline to follow the majority's approach because I fear that it will leave similar plaintiffs without a remedy for their claims.

---

1. The majority also concludes that Judge Lifland's legal analysis constituted an independent intervening act precluding a finding that Respondents' actions were the proximate cause of Coinco's injury. However, "[t]he mere existence of an intervening cause or causes does not necessarily absolve the original negligent actor from responsibility." *Tompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo.App. E.D.1996). "An intervening cause will not break the chain of causation when it is merely a natural progression of events that were set in motion by the original negligent act." *English v. Empire Dist. Elec. Co., Inc.*, 220 S.W.3d 849, 857 (Mo.App. S.D.2007). It must be "of a wholly independent, distinct, successive, [and] unrelated" character. *Jordan v. General Growth Development Corp.*, 675 S.W.2d 901, 903 (Mo.App. W.D.1984). Because Mr. Browne opined that Respondents' negligence caused Judge Lifland to issue the ruling against Coinco, I also find that there is an issue of fact as to whether Judge Lifland's analysis was "wholly independent, distinct, successive, and unrelated" to Respondents' alleged negligence.

Coinco's cause of action alleged that Respondents provided negligent advice concerning Coinco's possible infringement of Mars's '137 patent. Although Judge Lifland's 1999 opinion finding patent infringement of Mars's '137 patent gave Coinco notice of Respondents' negligent advice, that negligent advice did not result in any damages until final judgment was entered on Mars's patent infringement suit in 2007.

Under the majority's analysis, Coinco was required to file its legal malpractice claims within five years of the 1999 opinion, well before Coinco knew that Respondents' actions in fact resulted in substantial damages. This approach raises several issues for plaintiffs in Coinco's position. If the cause is called for trial, how will the plaintiff prove its damages? Does the trial court have to stay the proceedings until damages are awarded in the underlying suit, if any are indeed awarded? Only at that point could the level of injury from the alleged negligence be known. How long is the trial court required to keep the cause on its docket? Is eight years (as was possible in this case) too long? Does the trial court have to assume that damages will in fact be awarded in the underlying case? Would plaintiffs in Coinco's position be subject to an order of dismissal for failing to state a claim upon which relief can be granted? Any competent defense counsel would file a motion to dismiss as the elements of any negligence action, including legal malpractice, require an allegation that the plaintiff sustained damages. *Selimanovic v. Finney*, 337 S.W.3d 30, 35 (Mo.App. E.D.2011); Missouri Approved Instruction 31.00 (7th ed.2012). The obvious way to avoid these issues is to pursue a second course of action, the one chosen by Coinco in the present case, and wait until damages are

in fact awarded in the underlying suit before filing a claim. However, under the majority's holding, plaintiffs choosing this course of action risk their claims being dismissed if damages are not awarded in the underlying case in a timely manner. *Powel* could not have intended to place plaintiffs in such an untenable position.

Under the circumstances of this case, I would find that Coinco's cause of action did not accrue until damages in the underlying suit were awarded in 2007. Only then were the damages from the alleged negligence truly capable of ascertainment. At that point, a reasonable person would be put on notice that "substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Powel*, 197 S.W.3d at 585. Accordingly, I would hold that Coinco's suit, filed in 2008, was not barred by the five-year statute of limitations.

## II. CONCLUSION

Because I find a genuine issue of material fact as to the issue of causation on Coinco's '719 claims, I would reverse the trial court's grant of summary judgment. Furthermore, because I find that Coinco's '137 claims were not barred by the statute of limitations, I would also reverse the trial court's dismissal of those claims.